## MULL v EQUITABLE LIFE ASSURANCE SOCIETY
## OF THE UNITED STATES

Docket No. 95200. Argued October 6, 1993 (Calendar No. 10). Decided January 25, 1994.

William and Dorothy Mull brought a negligence action pursuant to the civil liability act, MCL 257.401; MSA 9.2101, in the Wayne Circuit Court against Equitable Life Assurance Society of the United States, Midwest Malls Limited Partnership, and others, seeking damages as a result of injuries suffered by William Mull while he was standing in the bucket of a front-end loader while installing Christmas wreaths at defendant Midwest's Southland Mall. The court, Lucile A. Watts, J., found as a matter of law that the front-end loader was a motor vehicle for purposes of the owner's liability statute and denied the defendants' motions for summary disposition and for a rehearing or reconsideration. Subsequently, a jury found the driver of the front-end loader negligent, and the court entered judgment for the plaintiffs. The Court of Appeals, NEFF, P.J., and MURPHY, J. (GRIBBS, J., dissenting), affirmed (Docket No. 127472). Midwest appeals.

In an opinion by Justice MALLETT, joined by Chief Justice CAVANAGH and Justices LEVIN and BRICKLEY, the Supreme Court *held*:

A front-end loader is a motor vehicle for purposes of the owner's liability statute.

1. "Motor vehicle" is a generic term for all classes of self-propelled vehicles not operated on stationary rails or tracks. The owner's liability statute provides that a motor vehicle includes any machine that is self-propelled or propelled by electric power that could be used to transport people or property on a highway, and imposes liability for a broad set of risks caused by motor vehicles of all types, whether used on public highways or other areas open to the public at large. Vehicles that meet the definition need not be capable of lawful operation on a highway. For purposes of the owner's liability statute, a

REFERENCES
Am Jur 2d, Automobiles and Highway Traffic § 670.
See ALR Index under Automobiles and Highway Traffic.

front-end loader is a motor vehicle because it is self-propelled and capable of transporting people or property upon a highway.

2. Comprehensive liability insurance is akin to all-risk insurance. All-risk insurance is a special type of insurance that covers every loss that may occur, except as a result of fraudulent acts of the insured. Because Midwest Malls purchased a comprehensive liability insurance policy to cover risks, the risk of injury for the negligent operation of the front-end loader is a risk that should have been covered under the policy.

Affirmed.

Justice GRIFFIN, joined by Justices BOYLE and RILEY, dissenting, stated that the front-end loader in this case is not a motor vehicle within the meaning of the owner liability statute.

Where a device does not draw or transport persons or property on a highway, and where it cannot lawfully be operated on a highway, it is not a vehicle within the purview of the owner liability statute. The conclusion is consistent with the no-fault act and the financial responsibility act and, under the circumstances of this case is more compatible with common sense.

196 Mich App 411; 493 NW2d 447 (1992) affirmed.

NEGLIGENCE — MOTOR VEHICLES — FRONT-END LOADERS — CIVIL LIABILITY ACT.

A front-end loader is a motor vehicle for purposes of the owner's liability statute (MCL 257.401; MSA 9.2101).

*Swanson, Torgow & Lyons, P.C.* (by *Peter J. Lyons*), for the plaintiff.

*Richard A. Kudla & Associates* (by *Richard A. Kudla* and *Victoria P. Lupo*); *Gross & Nemeth,* of counsel (by *James G. Gross*), for the defendant.

Amici Curiae:

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle* and *Marylyn Harty Thompson*) for Associated General Contractors of America, et al.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Sheri B. Cataldo*), for Continental Loss Adjusting Services, Inc.

*Stephens Law Firm* (by *William T. Stephens, Craig C. Lebamoff, Sean C. Connors,* and *Michael A. Williams*) for American Rental Association.

*Mark Granzotto* and *Monica Farris Linkner* for Michigan Trial Lawyers Association.

MALLETT, J. In this negligence action, we granted leave to determine whether a front-end loader is a motor vehicle for purposes of the owner's liability statute, MCL 257.401; MSA 9.2101. The trial court and the Court of Appeals concluded, as a matter of law, that a front-end loader is a motor vehicle. We affirm.

I

On Sunday, November 15, 1987, the plaintiff, William Mull, suffered serious personal injuries as a result of an accident that occurred while standing in the bucket of a front-end loader at the Southland Mall.[1]

A front-end loader is a motor driven, four-wheeled machine, whose rear tires are approximately four feet in diameter, and are much larger than the front tires. A front-end loader has a cab with windshield, a steering wheel to which the accelerator lever is attached and brake and clutch pedals located on the floor. In short, a front-end loader is a self-propelled machine.

At the time of the accident, Mull was an employee of The Center Companies (TCC), which has operated and maintained malls since June, 1970. TCC was not affiliated with Midwest Malls. Other

[1] On November 15, 1987, the date of plaintiff's injury, defendant Midwest Malls Limited Partnership was the owner of Southland Mall. Midwest Malls was also the owner of the front-end loader involved in the accident.

TCC employees present at the time of the accident were Todd Wilkerson, Jeanette Ramik, and Michael Koss.

On this day, Mr. Koss was in charge and instructed the Wilkerson, Ramik, and Mull work crew to install the mall's Christmas wreaths on the side of the shopping center. The mall owned a piece of equipment called a "televator" available for the Christmas wreath project. The televator is a four-wheeled device designed to raise a worker up to fifty feet in the air. It is controlled by the worker, who pushes buttons to raise or lower the platform. However, if used outside, a truck is required to tow the televator into position.

The televator often proved cumbersome and was never used for maintenance on the outside walls of the building. Instead, the workers were routinely instructed by the "lead man" to use the front-end loader as an elevator by raising the workers in the bucket.[2] This occasion was no different.

To accomplish the task, Mr. Koss drove the front-end loader from the garage through the Midwest Mall's public parking lot to the work site. He instructed the work crew to stand in the bucket of the front-end loader and install the Christmas wreaths.

The loader was positioned on the lawn and sidewalk area, immediately adjacent to the wall where Mull and Ramik were to install the Christmas wreaths. As Wilkerson extended the wreaths over the roof and down the wall, Mull and Ramik were elevated up the side of the wall to the wreath. At that point, Ramik pushed the wreath into position, and Mull attached the wreath to the wall.

---

[2] This was done even though using the loader in that fashion violated MIOSHA regulations as well as the front-end loader safety manual.

Seconds later, Mull gave Koss a "thumbs up" sign, which indicated that he wanted the bucket raised so that he could fasten the top of the wreath to another stud attached to the wall. However, rather than going straight up, the loader lurched forward causing the bucket to suddenly move forward and up.[3] As a result, Mull's right foot was crushed between the edge of the bucket and the wall.

The Mulls filed this negligence action pursuant to the civil liability act, MCL 257.401; MSA 9.2101. They sought damages incurred as a result of William Mull's injuries, including Dorothy Mull's loss of her husband's love, society, companionship, and consortium.

Midwest Malls moved for summary disposition under MCR 2.116(C)(10), on the grounds that the front-end loader was not a motor vehicle for purposes of MCL 257.401; MSA 9.2101, and, alternatively, that the machine was not being used as a motor vehicle at the time of the accident.[4] The trial court found that the front-end loader was a motor vehicle for purposes of the owner's liability statute,[5] and denied defendants' motions for summary disposition and for a rehearing or reconsideration.

Subsequently, the jury found that Koss was negligent in the operation of the front-end loader and that his negligence was a proximate cause of William Mull's injuries. The trial court entered judgment in the Mulls' favor consistent with the

[3] Mr. Mull testified that the front-end loader rolled back while the bucket moved forward and up.

[4] The requirement of the no-fault act that a vehicle be used "as a motor vehicle" has no application in this case because the case is brought exclusively under the owner's liability statute.

[5] In denying defendants' motion for summary disposition, the trial court relied on *Harder v Harder,* 176 Mich App 589; 440 NW2d 53 (1989).

jury verdict. Consequently, Midwest Malls moved for judgment notwithstanding the verdict, a mistrial, and a new trial. The trial court denied these motions. The Court of Appeals affirmed. 196 Mich App 411; 493 NW2d 447 (1992).

We granted leave to appeal on June 16, 1993.[6]

II

A

The following statutory provisions are germane to the question under consideration:

The owner of a *motor vehicle* shall be liable for any injury occasioned by the negligent operation of the *motor vehicle* whether the negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in the operation of the motor vehicle as the rules of the common law requires [sic]. [MCL 257.401(1); MSA 9.2101(1). Emphasis added.]

The act defines motor vehicle as follows:

"Motor vehicle" means every *vehicle* which is self-propelled and every vehicle which is propelled by electric power obtained from over-head trolley wires, but not operated upon rails. [MCL 257.33; MSA 9.1833. Emphasis added.]

For present purposes, the key word in the above definition is vehicle, which is defined in the code as follows:

"Vehicle" means every device in, upon, or by which any person or property *is or may be* transported or drawn upon a highway, except devices exclusively moved by human power or used exclu-

6 442 Mich 926.

sively upon stationary rails or tracks and except, only for the purpose of titling and registration under this act, a mobile home as defined in section 2 of the mobile home commission act, Act No. 96 of the Public Acts of 1987, being section 125.2302 of the Michigan Compiled Laws. [MCL 257.79; MSA 9.1879. Emphasis supplied.]

Defendant Midwest Malls contends that the Legislature, in enacting the owner's liability statute, intended to provide for liability exclusively for those vehicles that are either operated on a public highway or that may be lawfully operated on a public highway. In addition, defendant posits *Frazier v Rumisek,* 358 Mich 455; 100 NW2d 442 (1960), for the proposition that the owner's liability statute was enacted solely in response to the rising number of injuries resulting from automobile accidents, and concludes that it does not apply in this case. We disagree.

B

In the case before us, we must once again define the term "motor vehicle" and construe the phrase "may be." This language has received conflicting interpretations in lower court decisions. See *Calladine v Hyster Co,* 155 Mich App 175; 399 NW2d 404 (1986); *Jones v Cloverdale Equipment Co,* 165 Mich App 511; 419 NW2d 11 (1987); *Mull v Equitable Life Assurance Society, supra.* Accordingly, well-recognized rules of statutory construction must be employed.[7]

---

[7] It is well settled in Michigan that when construing statutes, courts must ascertain and give effect to the Legislature's intent. *Pioneer State Mutual Ins Co v Allstate Ins Co,* 417 Mich 590, 595; 339 NW2d 470 (1983). This is accomplished by interpreting statutory language according to its commonly accepted meaning. *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301; 273 NW2d 10 (1978), rev'g 68 Mich App 409; 242 NW2d 794 (1976), and aff'g 72 Mich App

Acknowledged authorities have declared that "motor vehicle" has a broader meaning than automobile.[8] It is a generic term for all classes of self-propelled vehicles not operated on stationary rails or tracks. *Jernigan v Hanover Fire Ins Co of New York,* 235 NC 334, 335-336; 69 SE2d 847 (1952).[9] Michigan's owner liability statute provides that a motor vehicle is any vehicle that is self-propelled and any vehicle that is propelled by electric power.[10] As explained below, we think it clear that, under the owner's liability statute, every machine that is self-propelled and could be used to transport people or property on a highway, is a motor vehicle.

Both parties agree that this Court interpreted the legislative intent in enacting the owner's liability statute in *Frazier, supra.* The Court stated:

> The owner liability statute before us was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, respondeat superior, agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, *the automobile.* Principal among the

426; 250 NW2d 85 (1976). Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. *Gardner-White Co v State Bd of Tax Administration,* 296 Mich 225, 230; 295 NW 624 (1941).

[8] The term "motor vehicles," although sometimes regarded as synonymous with or limited to automobiles, often has a broader meaning. Black's Law Dictionary (4th ed), pp 1164-1165. See also 1 Long, Liability Insurance, § 4.07, pp 4-28 to 4-30.

[9] See also *Gibbs v Mayo,* 81 So 2d 739, 740 (Fla, 1955) (a motor vehicle is a self-propelled vehicle that in or on which a person or thing is or may be carried); *Zuber v Clarkston Construction Co,* 315 SW2d 727, 733-734 (Mo, 1958) (self-propelled earth moving machines designed and intended to carry materials were motor vehicles within the meaning of the statute prohibiting any person from operating, tampering with, or climbing upon any motor vehicle or setting machinery thereof in motion without permission of owner or person in charge).

[10] MCL 257.33; MSA 9.1833.

legislative answers were the owner liability laws. Their purpose, as Mr. Justice EDWARDS held in *Moore v Palmer,* 350 Mich 363 [86 NW2d 585 (1957)], was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: *An owner was liable for the negligent operation of the machine owned by him when he had consented to its use. [Id.* at 457. Emphasis added.]

In *Frazier,* we impliedly refused to narrowly construe the owner's liability statute. Instead, we held that an owner is liable for the negligent operation of the *machine* owned by him when he had consented to its use. *Id.* Similarly, in *Ladner v Vander Band,* 376 Mich 321, 327; 136 NW2d 916 (1965), we ruled that the ownership liability statute included motor vehicles operated upon the highway and other vehicular traffic.

We reasoned:

Nothing in the present title or in the act limits application of the ownership liability section to motor vehicles "operated upon the public highways of this State." The title of PA 1949, No 300, provides as follows (2A CLS 1961, p 90 [8 Stat Ann 1960 Rev, p 52]):

"An act to provide for the registration, titling, sale and transfer, and regulation of vehicles operated upon the public highways of this State; to provide for the licensing of vehicle dealers and wreckers; to provide for the examination, licensing and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy and collection of specific taxes on vehicles, and the levy and collection of sales and use taxes, license fees and permit fees; to provide for the regulation and use of streets and highways; to provide penalties for violation of any of the provisions of this act; *to*

*provide for civil liability of owners and operators of vehicles* and service of process on nonresidents; and to repeal all other acts or parts of acts inconsistent herewith or contrary hereto." (Emphasis supplied.)

It would appear from an analysis of the title that the intent of the legislature was not to limit the civil liability provisions to "public highways" or it would have so provided within the civil liability portion of the title.

Likewise, in analyzing the ownership liability provisions of the statute, again the legislature did not see fit to so limit the liability to "vehicles operated upon the public highways," but provided as follows:

"Sec. 401. Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for *any injury* occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law requires [sic]." (Emphasis supplied.)

Had the legislature intended to limit ownership liability to "vehicles operated upon the public highways" it would have used language to carry out such intent.

We conclude, therefore, that the ownership liability statute is not restricted to the operation of motor vehicles upon public highways. [*Id.* at 326-328.]

Later, in *Woods v Progressive Mutual Ins Co,* 15 Mich App 335; 166 NW2d 613 (1968), lv den 382 Mich 754 (1969), the plaintiff evoked the owner's liability statute for an accident involving a bull-

dozer that occurred on the highway. The Court held that a bulldozer was a motor vehicle for the purpose of uninsured motor vehicle coverage because it is a self-propelled device that is or may be transported or driven upon a highway. *Id.* at 339-340.

Moreover, the Motor Vehicle Registration Act, MCL 257.216; MSA 9.1916 states:

> Every motor vehicle . . . is subject to the registration and certificate of title provisions of this act except the following:
>
> * * *
>
> (d) Special mobile equipment . . . .
>
> "Special mobile equipment" means every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including farm tractors, road construction or maintenance machinery . . . . *The foregoing enumeration shall be considered partial and shall not operate to exclude other vehicles which are within the general terms of this definition.* [MCL 257.62; MSA 9.1862. Emphasis supplied.]

We believe that the Legislature's special mobile equipment exemption from the Motor Vehicle Registration Act makes it unmistakable that a front-end loader is encompassed in the definition of a motor vehicle and thus supports this Court's broad construction of the owner's liability statute and the classification of all self-propelled vehicles not operated upon stationary rails or tracks as motor vehicles. See *Frazier, supra.* Consequently, we find that the owner's liability statute imposes liability for a broad set of risks, caused by motor vehicles of all types, whether used on public highways or

other areas open to the public at large, and, accordingly, it is that purpose that must be considered in resolving this dispute.

C

Further, the defendants urge this Court to construe the "is or may be" language to impose a requirement that a motor vehicle be capable of lawful operation on a highway in order to be considered a vehicle for the purpose of the owner's liability statute. As a general rule, the word "may" will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense. *Bloom v Texas State Bd of Examiners of Psychologists,* 475 SW2d 374, 377 (Tex Civ App, 1972), rev'd on other grounds.[11] Accordingly, the term "may be" is equivalent to possibly, perhaps, by chance. *State v Howland,* 153 Kan 352, 360; 110 P2d 801 (1941). The defendants interpretation of "is or may be" runs afoul of fundamental principles of statutory construction. A statute must be construed without violating the plain wording of the act so as to accomplish the intent and purpose of the Legislature.

The amici curiae, The Associated General of Contractors of America, et al, along with defendants, claim that a front-end loader is not a motor vehicle because it is incapable of lawful operation

[11] See also *Buttles v Navarro,* 766 SW2d 893, 894 (Tex App, 1989) (the word "may" is a word of permission rather than a word of command unless there is something in the subject or the context of the statute to indicate a legislative intent that it was used as a word of command); *Cowen v Bd of Water Comm'rs,* 411 Mass 744, 751; 585 NE2d 737 (1992) (the word "may" is one of permission and not of command; it should be construed, if possible, in accordance with the legislative intent); *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366, 369; 217 NW 15 (1928) (a court should give to the permissive word "may" its ordinary and accepted meaning unless to do so would frustrate the legislative intent).

upon a highway. They point out that construction equipment is not designed to be driven over the highways and that such equipment lacks the safety requirements applicable to other motor vehicles.[12] Amici curiae also claim that the Court of Appeals decision has erroneously transformed construction equipment into motor vehicles under the Motor Vehicle Code.

MCL 257.62; MSA 9.1862 and MCL 257.216(d); MSA 9.1916(d), were enacted in 1949. Since their enactment, construction equipment as well as other types of special mobile equipment enumerated in the statute have been considered to be motor vehicles under the Motor Vehicle Code. Therefore, amici curiae's assertion is simply incorrect because all such equipment is capable, under limited circumstances, of being lawfully operated on the public highways of this state. See *Woods v Progressive Mutual Ins Co, supra* at 337, n 3,[13] and

---

[12] The front-end loader lacked the following: backup lights, turn signals, flashing hazard lights, speedometer, and headlights (although it did have lights on top of the cab).

[13] [1915 PA 302], § 1, excepted from the definition of "motor vehicles," "traction engines, road rollers . . . and such vehicles as run only upon rails or tracks." That act was amended by [1941 PA 162], to except also "vehicles not designed for or employed in general highway transportation of persons or property and occasionally operated or moved over the public highway, including road construction or maintenance machinery, well-boring apparatus, ditch-digging apparatus and implements of husbandry." The 1915 act as so amended was repealed by [1949 PA 300], which enacted the present motor vehicle code containing the definitions of "motor vehicle" and "vehicle" previously quoted in this opinion.

In *Haveman v [Kent Co Rd Comm'rs,* 356 Mich 11, 24; 96 NW2d 153 (1959)], the Michigan Supreme Court considered these definitions and declared that a road maintenance machine was not a motor vehicle under the 1915 act, as amended, but was a motor vehicle under the 1949 act.

In OAG 1933-1934 [pp 122-124 (November 29, 1932)] Attorney General Voorhies ruled that a tractor road grader was a motor vehicle after considering the definition in [1915 PA 302] and the definitions of "vehicle" and "motor vehicle" in [1929 CL] 4693, and in [1931 PA 91], which latter definitions are in

*Harder v Harder,* 176 Mich App 589; 440 NW2d 53 (1989).

The controversy in this case exists because the Court of Appeals panel in *Calladine, supra,* erroneously interpreted the language of this Court's decision in *Frazier* and failed to look at *Ladner.* The *Calladine* panel ruled that because the forklift could not be *lawfully* operated on a highway and was not being driven upon the highway at the time of the accident, the Legislature did not intend that the forklift fall within the purview of the owner's liability statute. *Id.* at 181. Later, in *Jones v Cloverdale Equipment Co, supra,* the Court of Appeals addressed the same issue again. The trial court granted summary disposition for the defendant, quoting the *Calladine* panel's interpretation of the "is or may be" language found in the definition of vehicle. The *Jones* panel determined that a forklift was incapable of lawful operation on a highway. Consequently, under *Calladine,* a forklift is not a vehicle and therefore not a motor vehicle for purposes of the owner's liability statute. *Id.* at 514.

In view of general rules of statutory construction, the *Calladine* and *Jones* panels' rulings were impermissibly narrow, especially in light of *Frazier* and *Ladner.* Section 401 of the civil liability act has been in existence since 1949. It has been amended three times in the last forty-four years, and the Legislature has never seen fit to add language to that chapter that says, "This provision

all relevant respects the verbatim antecedents of the definitions in presently governing [1949 PA 300].

See, also, *Behling v County of Los Angeles,* 139 Cal App [2d] 684; 294 P2d 534 (1956), *Lambert v Southern Counties Gas Company of California,* 52 Cal 2d 347; 340 P2d 608 (1959); *Zuber v Clarkston Const Co* [n 9 *supra*]; *Peterson v King County,* 199 Wash 106; 90 P2d 729 (1939). [*Id.* at 339, n 5.]

applies only to accidents occurring on the highway," or "This provision pertains only to vehicles capable of lawful operation on the highway."

Conversely, if you look at § 601, which is the beginning section of the chapter on obedience to traffic laws, there the Legislature specifically stated, "The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a given section." MCL 257.601; MSA 9.2301.

The defendant also argues that the no-fault act should be considered in pari materia with the Motor Vehicle Code definition of motor vehicle for confirmation and clarification. However, we find that no clarification is gained by attempting to consider the two acts in pari materia.[14]

The definitions of MCL 257.33; MSA 9.1833 and MCL 257.79; MSA 9.1879 clearly include within their purview the vehicle involved in the accident that injured the plaintiff. Furthermore, there is nothing in either definition to suggest that vehicles that meet the definition must be capable of lawful operation on the highway. If the Legislature had intended to limit ownership liability to those devices that could lawfully be operated on a highway, it would have used such language to

[14] It is important to note that neither the trial court nor the Court of Appeals addressed this issue. The doctrine of in pari materia is simply an interpretative tool to be used in determining the meaning of ambiguously worded statutes. The two definitions of "motor vehicle" under the Motor Vehicle Code and in the no-fault act are separate and independent. Furthermore, the premise of our holding is that the statute is not ambiguous. Instead, the controversy in this matter exists only because of the erroneous interpretation of this Court's decision in *Frazier* by the Court of Appeals panel in *Calladine,* and its failure to look at this Court's decision in *Ladner.* Therefore, we find it is unnecessary to address the issue whether the owner's liability statute was modified by the no-fault act because this case was brought solely under the owner's liability statute.

carry out its intent. Therefore, we find that a front-end loader is a motor vehicle.

Comprehensive liability insurance is akin to "all risk insurance."[15] All-risk insurance is a special type of insurance policy that, as a rule, covers every loss that may occur, except as a result of fraudulent acts of the insured.[16] Midwest Malls purchased a comprehensive liability insurance policy to cover risks. The risk of injury from the negligent operation of the front-end loader is a risk that should have been covered under that policy.

### CONCLUSION

In summary, we hold that MCL 257.401; MSA 9.2101 applies to the present action. The phrase "may be" connotes possibility; it does not connote certainty or lawfulness. The front-end loader involved in the accident is a motor vehicle because it is self-propelled and capable of transporting people or property upon a highway. We affirm the decision of the Court of Appeals.

CAVANAGH, C.J., and LEVIN and BRICKLEY, JJ., concurred with MALLETT, J.

GRIFFIN, J. (*dissenting*). Because I conclude that the front-end loader in this case, which was operated in the parking lot of a shopping mall, is not a "motor vehicle" within the meaning of the civil liability act, MCL 257.401 *et seq.*; MSA 9.2101 *et seq.*, commonly referred to as the owner liability statute, I respectfully dissent.

---

[15] See Black's Law Dictionary (6th ed), p 802.

[16] *Id.* at 802. See also 13A Couch, Insurance, 2d (rev ed), § 48:141, p 139.

I

I would add to the statement of facts provided by the majority the information that because the accident occurred in the course of plaintiff's employment, he received benefits under the Workers' Disability Compensation Act[1] from the insurance carrier of his employer, TCC. The record reflects that as of January 10, 1990, plaintiff had received $30,959 in wage loss benefits and $49,867 in medical benefits.

A

Resolution of this appeal turns on the meaning of four little words, "is or may be," as they are used in § 79 of the Michigan Vehicle Code, which in pertinent part provides:

"Vehicle" means every device in, upon, or by which any person or property *is or may be* transported or drawn upon a *highway,* except devices exclusively moved by human power or used exclusively upon stationary rails or tracks and except a mobile home . . . . [MCL 257.79; MSA 9.1879. Emphasis added.]

The code also defines "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from over-head trolley wires, but not operated upon rails." MCL 257.33; MSA 9.1833.

Because the owner liability statute is part of the Michigan Vehicle Code,[2] we look to the code's definitions in determining the proper construction of its terms. In pertinent part, the owner liability statute provides:

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[2] MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*

The owner of a *motor vehicle* shall be liable for any injury occasioned by the negligent operation of the *motor vehicle* whether the negligent operation consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in the operation of the motor vehicle as the rules of the common law requires [sic]. The owner shall not be liable, however, unless the motor vehicle is being driven with his or her express or implied consent or knowledge . . . . [MCL 257.401; MSA 9.2101. Emphasis added.]

With those statutory provisions in mind, we turn to an examination of some court decisions that are instructive.

### B

While the precise question presented is one of first impression, this Court has spoken concerning the purpose underlying the owner liability statute. In *Frazier v Rumisek,* 358 Mich 455, 457; 100 NW2d 442 (1960), this Court explained:

The owner liability statute before us was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, respondeat superior, agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, *the automobile.* Principal among the legislative answers were the owner liability laws. Their purpose, as Mr. Justice EDWARDS held in *Moore v Palmer,* 350 Mich 363 [86 NW2d 585 (1957)], was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: An owner was liable for the negligent operation of the machine owned by him when he had consented to its use. [Emphasis added.]

There can be no doubt that the primary concern

of the Legislature when it enacted the owner liability statute was the rapidly rising number of deaths and injuries resulting from automobile accidents on the highways. See also *Kiefer v Gosso,* 353 Mich 19; 90 NW2d 844 (1958); *Roberts v Posey,* 386 Mich 656; 194 NW2d 310 (1972). However, in *Ladner v Vander Band,* 376 Mich 321; 136 NW2d 916 (1965), in which an automobile struck the plaintiff in his employer's parking lot, this Court made clear that the reach of the owner liability act is not limited to accidents that occur on the public highways.

The first Michigan decision to address the issue before us was *Calladine v Hyster Co,* 155 Mich App 175; 399 NW2d 404 (1986). In that case, a plaintiff was injured when struck by a forklift operated by a co-worker inside the plant of their employer, who was not the owner of the forklift. Upon review of a negligence suit brought by the injured plaintiff against the forklift owner, the Court of Appeals ruled that

> the forklift which struck plaintiff's ward was not a motor vehicle within the meaning of the owner's liability statute. Where a device is not actually transported or drawn upon a highway and *where it cannot lawfully be operated on a highway,* it is not a vehicle within the purview of the owner's liability statute. *That is the meaning of the "is or may be" language* found in MCL 257.79; MSA 9.1879. This reading of the statute comports with the legislative design to deal primarily with injuries occasioned by automobiles, as set out in *Frazier, supra.* [*Id.* at 180-181.]

Later, in *Jones v Cloverdale Equipment,* 165 Mich App 511, 514; 419 NW2d 11 (1987), the Court

of Appeals applied similar reasoning in another forklift case. The *Jones* panel explained,

[U]nder the *"is or may be"* language [of MCL 257.79; MSA 9.1879] a device must be capable of lawful operation on a highway in order to be considered a "vehicle" within the purview of the owner's liability statute. In this case, the undisputed facts established that the subject forklift had no headlights or taillights, no turn signals, no windows or doors, and lacked registration or licensing. *It was thus incapable of lawful operation on a highway.* Consequently, under *Calladine,* it was not a "vehicle"—and therefore not a "motor vehicle"—for purposes of the owner's liability statute. [Emphasis added.]

When this case came before the Court of Appeals, a majority acknowledged that "[i]f we were to apply the analyses set forth in *Calladine* and *Jones,* we would have to find that the front-end loader is not a motor vehicle for purposes of the owner's liability statute," 196 Mich App 418, but then stated:

We disagree . . . with the *Calladine* Court's interpretation of the "is or may be" language in the definition of "vehicle."

\* \* \*

In our view, nothing in the language of § 79 of the Vehicle Code permits this Court to impose the requirement that a device must be capable of *lawfully* being operated on a highway in order for it to be considered a vehicle for purposes of the owner's liability statute. [*Id.* at 418-419.]

The dissenting judge, having served on the *Calladine* panel, registered sharp disagreement with the majority's intimation that *Calladine* had "read

into the statute a meaning not intended by the Legislature."[3] *Id.* at 425.

## C

It may not be unreasonable to suggest that the Legislature's use of the words "is or may be" in the context of § 79 has not provided us with a paradigm of clarity. The familiar principle that unambiguous terms are to be given their plain meaning lends little assistance in the resolution of this controversy. Our purpose must be to give effect to the intent of the Legislature. In so doing, we often find it necessary to infer intent from the language used. As this Court said in *White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979):

> [I]t is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that governs. The words are to be applied to the subject matter and to the general scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished    or    the    evil    sought    to    be remedied . . . .

However, in the absence of unambiguous direction from the Legislature, the judiciary ought to be reluctant to infer the imposition of such an onerous burden as vicarious liability upon any group or classification. Clearly, in this case, if the accident involving a front-end loader had occurred on the highway, it would have been covered by the § 79 definition. See *Woods v Progressive Mutual Ins Co,* 15 Mich App 335; 166 NW2d 613 (1968). Under those circumstances, it would be a "device . . . by which any person or property *is* . . . transported

---

[3] The dissenter on the panel in this case was Judge Gribbs. Judge Neff authored the opinion in which Judge Murphy joined.

or drawn upon a highway . . . ." MCL 257.79; MSA 9.1879. On the other hand, when a self-propelled device that is not designed for highway use, like a front-end loader, becomes involved in an accident away from the highway, it cannot be said that the Legislature clearly intended the imposition of vicarious liability.

Plaintiff points to the word "may" in the § 79 definition and argues that its meaning broadly sweeps into the statute's ambit every device that is "*capable* of being" operated upon a highway. Similarly, a majority of the Court of Appeals panel would hold that the statute applies to "every machine that is self-propelled and *could be* used to transport people or property on a highway . . . ." *Ante,* p 515. (Emphasis added.) Such a construction should be rejected for several reasons.

First, that interpretation of the "is or may be" language would render nugatory the word "is" in the definition, contrary to the fundamental rule of construction that every word in a statute should be given meaning if possible. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971). If a self-propelled device *is* being operated on a highway, of course it is *capable* of being so operated. Because the class of devices capable of being operated on a highway necessarily includes all devices that in fact are operated on highways, the word "is" in the definition becomes superfluous under such an interpretation.

Second, it is obvious that such a sweeping interpretation, extending vicarious liability to every owner of every device "capable of being" operated on a highway, would produce absurd results that could not have been intended by the Legislature. The list of those affected would include, for example, owners of motorized wheelchairs, riding lawn mowers, golf carts, and even airplanes. See *Gen-*

*eral Aviation, Inc v Cessna Aircraft Co,* 703 F
Supp 637 (WD Mich, 1988).

In these circumstances, I find the interpretation
and reasoning in *Calladine* to be more compatible
with common sense as well as the underlying
purpose of the Legislature.

II

It has been pointed out that "may" is often used
as a word of permission. See *Smith v School Dist
No 6, Fractional, Amber Twp,* 241 Mich 366; 217
NW 15 (1928); *Newport West Condo Ass'n v Ven-
iar,* 134 Mich App 1; 350 NW2d 818 (1984). In fact,
as defined in the statute, MCL 257.82; MSA 9.1882,
"may is permissive." Thus, a vehicle that is or
"may be" drawn upon a highway is one that is
*permitted* to be transported on a highway. It is
altogether reasonable to read the words at issue as
saying, in effect, that " '[v]ehicle' means every
device . . . by which any person or property *in
fact is transported on a highway or would be
permitted to be transported on a highway."*

Further, it does not require a leap of logic to
conclude that in this context the Legislature was
referring to *legal* permission. In other words, a
self-propelled vehicle *may be* operated on a high-
way if it is designed and equipped as the law
requires.

As the dissenting Court of Appeals judge ex-
plained:

> [T]he tractor [front-end loader] in this case lacks
> many of the equipment features required by the
> Vehicle Code. The headlights are not a proper
> distance from the ground, MCL 257.685(c); MSA
> 9.2385(c). The tractor has no turn signals, MCL
> 257.697a; MSA 9.2397(1), hazard lights, MCL
> 257.698a; MSA 9.2398(1), or side view mirrors,

MCL 257.708; MSA 9.2408. It was not registered. For at least the past seventeen years, the tractor had been operated on the premises of the shopping mall where the injury occurred, not on the public highway.

* * *

[T]his is not a case where the tractor at issue is lacking a single headlight or some other solitary feature required by the Vehicle Code. In this case, in addition to lacking the most basic safety equipment, the tractor has no speedometer, is only capable of speeds up to twenty-five miles an hour, and cannot be operated on the public highway without special safety precautions. See, e.g., MCL 257.688; MSA 9.2388. Indeed, on the few occasions this tractor was operated on a public highway, it was operated with a vehicle following it. MCL 257.686(4)(b); MSA 9.2386(4)(b). In light of these facts, it cannot be seriously argued that the tractor in this case was designed for highway use. [196 Mich App 425-426.]

In sum, it is obvious that a device that lacks so many of the required characteristics for proper and safe operation on the public highway is not *legally permitted* to be driven on the highway, even though it could be *capable* of being driven there.

Accordingly, I would adopt the *Calladine* interpretation, which gives meaning to every word of the "is or may be" language while recognizing a logical distinction between accidents that occur on a highway and involve any self-propelled device and those accidents that occur off the highway and involve machinery designed for purposes other than highway use. This distinction is important in the allocation of risks and costs for insurance purposes, particularly in such areas of commerce as the construction industry.

As noted by an amicus curiae supporting defen-

dant, for many years the forklifts, front-end load-
ers, and other motorized machinery used on a
construction site have been rented from off-site
lessors or have been made available by one con-
tractor to another. Since 1912, those who work in
such an environment have enjoyed workers' com-
pensation protection, the cost of which is borne by
their employers. To adopt the owner liability stat-
ute interpretation now urged upon us by plaintiffs
would surely increase the cost and work a change
in the allocation of insurance reparations for off-
highway accidents. Finding no basis to believe that
such a change was anticipated or intended by the
Legislature, I would leave this policy decision to
the wisdom of the legislative branch.

III

The conclusion I would reach concerning the
proper construction of the owner liability statute
is reinforced by reference to the no-fault act[4] and
the financial responsibility act.[5] Statutes that re-
late to the same subject matter or share common
objectives should be read in the same light, even
though they may have been enacted at different
times and do not refer to each other. *Palmer v
State Land Office Bd,* 304 Mich 628; 8 NW2d 664
(1943).

The owner liability statute and the no-fault act
both address the scope and conditions of liability
related to the use of motor vehicles. See *Hill v
Aetna Life & Casualty Co,* 79 Mich App 725; 263
NW2d 27 (1977), and *Citizens Mutual Ins Co v
Fireman's Fund Ins Co,* 234 F Supp 931 (WD Mich,

[4] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*
[5] MCL 257.501 *et seq.*; MSA 9.2201 *et seq.*

1964).[6] Likewise, the financial responsibility act and the owners liability act share the common purpose of ensuring that a financially responsible source of recovery will be available for victims of motor vehicle accidents. See *Surtman v Secretary of State,* 309 Mich 270; 15 NW2d 471 (1944).

In reviewing the financial responsibility act, it is noted that of all the vehicles *capable* of operation on the highway, that act exempts "special mobile equipment," "farm tractors," and "implements of husbandry." Clearly, a front-end loader fits within the code's definition of "special mobile equipment."[7] Thus, our interpretation of "motor vehicle" in the owner liability act is not at odds, but is consistent with the financial responsibility act.

We also find it instructive to compare the "is or may be" language at issue with the corresponding no-fault act definition, which provides: " '[m]otor vehicle' means a vehicle . . . *operated or designed for operation* upon a public highway . . . ." MCL 500.3101(2)(e); MSA 24.13101(2)(e). (Emphasis added.)

---

[6] In *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 471; 208 NW2d 469 (1973), this Court took note of the fact that over two hundred statutes were related and in some way affected by enactment of the no-fault act. In particular, Justices LEVIN and T. G. KAVANAGH, in concurring opinions, recognized that the no-fault act would modify the motor vehicle act and the owner's liability statute. Justice LEVIN stated: "[t]he principal change in former law wrought by the no-fault act is the modification of the common-law liability for negligence in driving an automobile. In consequence, there is a change in the recoveries allowable under the civil liability act and the wrongful death act." *Id.* at 496.

[7] "Special mobile equipment" means every vehicle *not designed or used primarily for the transportation of persons or property* and incidentally operated or moved over the highways, including farm tractors, road construction or maintenance machinery, mobile office trailers, mobile tool shed trailers, mobile trailer units used for housing stationary construction equipment, ditch-digging apparatus, and well-boring and well-servicing apparatus. The foregoing enumeration shall be considered partial and shall not operate to exclude other vehicles which are within the general terms of this definition. [MCL 257.62; MSA 9.1862. Emphasis added.]

Although the wording of these definitions is not identical, in substance it is the same. For example, in *Pioneer State Mutual Ins Co v Allstate Ins Co,* 417 Mich 590, 597-598; 339 NW2d 470 (1983), this Court ruled that where an accident occurs off the highway, a self-propelled device is not a "motor vehicle" for purposes of the no-fault act unless it is *primarily designed for operation on a public highway.* Under the no-fault act, a device is not a "motor vehicle" simply because it is *capable* of operation on a public highway. Thus, our interpretation of "motor vehicle" under the owner liability act would stand in harmony with the corresponding no-fault act definition.

IV

For the reasons set forth, I dissent and would hold that the front-end loader in the instant case is not a "motor vehicle" within the meaning of the owner liability statute.

BOYLE and RILEY, JJ., concurred with GRIFFIN, J.