RANSOMES AMERICA CORPORATION,
a Delaware corporation, Plaintiff and
Counter–Defendant,

v.

SPARTAN DISTRIBUTORS, INC., a
Michigan corporation, Defendant
and Counter–Plaintiff.

No. 1:95–CV–123.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 18, 1996.

Daniel J. La Fave, Kathleen S. Donius,
Reinhart, Boerner, Van Deuren, Norris &
Rieselbach, S.C., Milwaukee, WI, Frederick
D. Dilley, Boyden, Waddell, Timmons & Dil-
ley, Grand Rapids, MI, for plaintiff.

Jon G. March, Miller, Johnson, Snell &
Cummiskey, Grand Rapids, MI, for defen-
dant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This is fundamentally an action for declaratory judgment. Plaintiff Ransomes America Corporation ("RAC") seeks declaration that the February 1995 termination of its dealer agreement with defendant Spartan Distributors, Inc. ("Spartan") was lawful. Spartan has responded with a three-count counterclaim. Now before the Court is RAC's motion to dismiss and for summary judgment challenging counts I and II of the counterclaim.

### I.

RAC manufactures and/or sells Ransomes, Cushman and Ryan professional lawn maintenance products. For many years, Spartan, a retail distributor and dealer of lawn and turf care products, had sold RAC products in Western Michigan; in particular, Cushman and Ryan products. Spartan is also a Toro distributor, selling a complete line of Toro turf maintenance products. The relationship between RAC and Spartan had been governed most recently by a Master Dealer Agreement entered into in February 1993. In December 1994, RAC gave notice of its unilateral decision to terminate the relationship in accordance with the agreement's termination provisions, effective February 2, 1995. An undisputed reason for RAC's decision was Spartan's refusal to sell Ransomes reel and rotary mowers. It appears RAC had wanted Spartan to sell Ransomes products, in addition to the Cushman and Ryan products it had been selling, so as to market a full range of RAC turf maintenance and utility products, and enable RAC to better compete with its main competitors, Toro and Jacobsen. When Spartan objected to the termination and threatened to sue, RAC commenced this action for declaratory judgment.

In count I of its counterclaim, Spartan alleges the termination violates Michigan's statute regulating dealings between motor vehicle manufacturers, dealers and distributors, M.C.L. § 445.1561 et seq., in that it was not based upon good cause and was not attended by proper notice. Count II asserts an antitrust claim alleging the termination is premised on an agreement, combination or conspiracy in restraint of trade, in violation of the Sherman Act, 15 U.S.C. § 1. In count III, Spartan alleges that even if the relationship is deemed to have been terminable at will, it is entitled to recoup overhead costs incurred in handling distribution of the RAC product line.

### II.

RAC challenges the count II antitrust claim under Fed.R.Civ.P. 12(b)(6), contending it fails to state a valid claim. The Court is obliged to construe the complaint liberally in Spartan's favor and accept as true all well-pleaded factual allegations. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). The motion to dismiss may be granted only if it appears beyond doubt that Spartan can prove no set of facts in support of its claim that would entitle it to relief. *Id.; Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994).

Spartan alleges RAC's requirement that it purchase Ransomes mowers in order to be able to purchase other RAC products affects a substantial volume of interstate traffic, adversely affects competition, and is an unlawful restraint of trade. RAC characterizes Spartan's claim as one alleging an illegal "tying arrangement," that is, "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Smith Machinery Co., Inc. v. Hesston Corp.*, 878 F.2d 1290, 1294 (10th Cir.1989), *cert. denied*, 493 U.S. 1073, 110 S.Ct. 1119, 107 L.Ed.2d 1026 (1990), quoting *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). "Certain tying arrangements pose an unacceptable risk of stifling competition and therefore are unreasonable 'per se.' " *Smith Machinery, supra*, at 1295, quoting *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 9, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984). However, RAC argues, the instant tying arrangement is in the nature of "line forcing," "whereby a manufacturer agrees to license or franchise a dealer to sell its products, but only on condition that the dealer sell a full or representative line of those products." *Smith Machin-*

*ery,* at 1295. Line forcing is said to be a "vertical nonprice restraint"—an agreement between entities at different levels of distribution that does not purport to affect prices charged for goods"—that is not illegal per se because it is not manifestly anticompetitive. *Id;* see also *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,* 28 F.3d 1379, 1383 (5th Cir.1994).

■ Tying arrangements that constrain only dealers are not presumptively illegal because they pose little danger to competition, as long as consumers may purchase the two goods separately. *Id.* Such tying arrangements may be illegal under § 1 of the Sherman Act, but they are not presumptively so, and it is incumbent upon the plaintiff, under "the Rule of Reason," to plead and show that the challenged arrangement has an "actual adverse effect on competition." *Smith Machinery,* at 1298, quoting *Jefferson Parish, supra,* 466 U.S. at 29, 31, 104 S.Ct. at 1567, 1568. This, RAC contends, Spartan has not done and cannot do.

■ Spartan has failed to persuasively rebut the above arguments. In support of its position that a tying arrangement imposed by a manufacturer upon a dealer is properly subject to "per se analysis," Spartan relies on an unpublished opinion from the Ninth Circuit, *Western Power Sports, Inc. v. Polaris Industries Partners, L.P.,* 951 F.2d 365 (Table), 1991 WL 266523 (9th Cir.1991), *cert. denied,* 506 U.S. 821, 113 S.Ct. 70, 121 L.Ed.2d 36 (1992). In *Western Power Sports,* the court reversed an award of summary judgment to the defendant manufacturer, applying per se analysis and finding genuine issues of material fact. The distinction between tying arrangements that constrain only dealers and those that constrain consumers appears not to have been raised and was not addressed by the court. The reasoning of the *Western Power Sports* opinion is summary in nature and not persuasive in the face of the more thorough analysis contained in *Smith Machinery* and *Taylor Sales, supra.* Moreover, Sixth Circuit cases recognizing that other kinds of vertical nonprice restrains are subject not to per se analysis, but

to rule of reason analysis, indicate the Sixth Circuit will follow the lead of *Smith Machinery* and *Taylor Sales.* See *Int'l Logistics Group v. Chrysler Corp.,* 884 F.2d 904, 906–07 (6th Cir.1989); *Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.,* 854 F.2d 802, 805–06 (6th Cir.1988).

Accordingly, the Court concludes count II does not set forth a cause of action giving rise to a presumption that trade and competition have been unlawfully restrained by the alleged tying arrangement. In the absence of such a presumption, Spartan must affirmatively plead anticompetitive effect as an essential element of a rule of reason claim.

■ Spartan maintains that its general allegations are sufficient to withstand Rule 12(b)(6) scrutiny. Yet, while Spartan has alleged that RAC's arrangement adversely affects competition, such a bald, conclusory allegation is insufficient. "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion." *Crane & Shovel Sales, supra,* 854 F.2d at 805, 810; see also *Re/Max Int'l v. Realty One, Inc.,* 900 F.Supp. 132, 150 (N.D.Ohio 1995) ("insufficient allegations of anticompetitive effect will justify dismissal of a § 1 antitrust claim").

The allegations of count II thus fail to state either a valid "per se" claim or a valid "rule of reason" claim. RAC's motion to dismiss will be **granted.**[1]

## III.

With respect to Spartan's count I claim, asserting violations of Michigan's motor vehicle dealer protection statute, RAC moves for summary judgment under Fed.R.Civ.P. 56. The motion requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. See generally *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir. 1993). An issue of fact is "genuine" if the evidence is such that a reasonable jury could

---

1. Dismissal of the antitrust claim is without prejudice to Spartan's right to move for leave to amend so as to augment the deficient allegations not later than January 24, 1996.

**186**

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

RAC contends there is no genuine issue of material fact and that it is entitled to summary judgment because Spartan is not a motor vehicle dealer subject to the Michigan statute's protections. Spartan disagrees.

█ Among the RAC products sold by Spartan were utility vehicles known as the Cushman Turf–Truckster. Spartan sold several models of the Turf–Truckster; three- and four-wheel versions, gasoline and electric powered. Spartan contends the Turf–Truckster is a "self-propelled device in, upon or by which any person or property is or may be transported or drawn upon a highway," and thus satisfies the definition of a motor vehicle under the Michigan Vehicle Code, M.C.L. §§ 257.33, 257.79. Inasmuch as this definition is expressly incorporated into the motor vehicle dealer protection statute, M.C.L. § 445.1564(3), and Spartan is engaged in the business of purchasing, selling, exchanging or dealing in such new motor vehicles, Spartan contends it is, under the plain language of the statute, a motor vehicle dealer entitled to the statute's protections. See M.C.L. § 445.1565(2).

█ It is axiomatic that when construing statutes, courts are obliged to ascertain and give effect to legislative intent. *Mull v. Equitable Life Assurance Society,* 444 Mich. 508, 514, n. 7, 510 N.W.2d 184 (1994). This is accomplished, as a threshold matter, by interpreting statutory language according to its commonly accepted meaning. *Id.* When the legislative intent behind statutory language is not clear and judicial construction is necessary, the courts must construe the statute as a whole and seek to harmonize its provisions so that none is denied effect. *Turner v. Auto Club Ins. Ass'n,* 448 Mich. 22,

27–28, 528 N.W.2d 681 (1995); *Gusler v. Fairview Tubular Products,* 412 Mich. 270, 291, 315 N.W.2d 388 (1981).

In *Mull,* the Michigan Supreme Court construed the above definition of motor vehicle broadly in accordance with its plain language and concluded that a front-end loader is a motor vehicle because it is self-propelled and capable of transporting people or property upon a highway. 444 Mich. at 523, 510 N.W.2d 184. Spartan urges the Court to follow *Mull* and find that the Turf–Truckster is a motor vehicle and that, therefore, Spartan is a motor vehicle dealer.

The *Mull* court was careful to restrict the breadth of its ruling to the context in which the question arose. *"[U]nder the owner's liability statute,"* the court held, "every machine that is self-propelled and could be used to transport people or property on a highway, is a motor vehicle." 444 Mich. at 515, 510 N.W.2d 184 (emphasis added).

In so ruling, the majority opinion conspicuously avoided even mentioning the two published opinions which had, for purposes of the motor vehicle dealer protection statute, construed "motor vehicle" more narrowly, *General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1042 (6th Cir.1990), affirming in relevant part, *General Aviation, Inc. v. Cessna Aircraft Co.,* 703 F.Supp. 637, 648 (W.D.Mich.1988). In the *General Aviation* opinions, "motor vehicle" was deemed to include only self-propelled devices that can be *lawfully* operated on a highway. An airplane was thus held not to be a motor vehicle for purposes of the motor vehicle dealer protection statute, even though it arguably qualified under the plain language of the statutory definition as a "device in, upon, or by which any person or property is or *may be* transported or drawn upon a highway." M.C.L. § 257.79.

*Mull* expressly rejected two court of appeals decisions upon which the *General Aviation* rulings relied. In *Jones v. Cloverdale Equip. Co.,* 165 Mich.App. 511, 513–14, 419 N.W.2d 11 (1987), and *Calladine v. Hyster Co.,* 155 Mich.App. 175, 179–80, 399 N.W.2d 404 (1986), forklifts were held not to be motor vehicles because incapable of lawful oper-

ation on a highway. However, both decisions, like *Mull,* construed "motor vehicle" for purposes of determining liability under the owner's liability statute, M.C.L. § 257.401. *Mull,* by rejecting *Jones* and *Calladine,* has thus undermined the reasoning employed in the *General Aviation* rulings, but stopped short of overruling or even criticizing the *General Aviation* result. *Mull* does not, therefore, compel the conclusion that "motor vehicle" must be construed as broadly for purposes of the motor vehicle dealer protection statute as for the owner's liability statute.

In reasoning that "motor vehicle" should be broadly construed, the *Mull* court did not rely solely on the broad definitional language in the Michigan Vehicle Code, but also considered the history and purposes of the owner's liability statute. The *Mull* court thus adhered to its duty to effectuate the legislative intent underlying the owner's liability statute. Observing that same duty in this case, the Court remains unpersuaded that the Michigan Legislature intended to extend the protections of the motor vehicle dealer protection statute to dealers of vehicles like the Turf–Truckster, which though capable of operation on a highway, are not normally intended or designed for such use.

A common sense reading of the statute and review of the legislative history [2] indicate the Legislature was concerned primarily with relationships between automobile manufacturers and dealers. The Legislature sought to provide automobile dealers with certain protections against manufacturers' arbitrary or abusive exercise of their superior power. The protections are afforded not only to automobile dealers, but to motor vehicle dealers. Yet, though Spartan has bought and sold products that may come within that broad definition, it does not necessarily follow that Spartan is a new motor vehicle dealer within the contemplation of the statute.

Though not all of the statute's protections are expressly so limited, several provisions suggest they are meant to apply only to *licensed* motor vehicle dealers. For instance, the revocation of a license that a new motor vehicle dealer is required to have is a circumstance justifying a shorter period of notice by the manufacturer of its decision to terminate the dealer agreement. M.C.L. § 445.1570(c)(iv). The statute prohibits manufacturers from unreasonably withholding consent to sell, transfer or exchange a dealership to a qualified buyer only if the buyer is capable of being licensed as a new motor vehicle dealer in Michigan. M.C.L. § 445.1574(1)(i). The manufacturer is required to advise each licensed new motor vehicle dealer of the dealer's obligations for preparation, delivery, and warranty service on its products. M.C.L. § 445.1577(1). Finally, the manufacturer is required to compensate licensed new motor vehicle dealers for repairs effected by factory recalls. M.C.L. § 445.1577(3)(c).

Licensure by the Secretary of State is required of all motor vehicle dealers who deal in vehicles required to be titled. M.C.L. § 257.248(10). All motor vehicles that are driven or moved upon a highway are subject to the registration and titling requirements, with several enumerated exceptions. M.C.L. § 257.216. Thus, the several references to licensure suggest a legislative understanding that the relationships being regulated are those between manufacturers and dealers of motor vehicles operated on the highways.

State licensure is not made an explicit prerequisite to enjoyment of each of the protections afforded by the motor vehicle dealer protection statute. However, in the opinion of the Court, the frequency and apparent randomness with which licensure is mentioned in the statute reflects legislative intendment to limit the scope of the statute's protections to licensed motor vehicle dealers.

---

**2.** At the conclusion of oral arguments on RAC's motion on November 20, 1995, the Court invited both parties to submit any legislative history they had gathered in researching legislative intent. Both parties responded appropriately and timely. However, RAC also submitted the affidavit of Raymond J. Foresman, Jr., legal counsel for the Michigan Automobile Association, who participated in the drafting of the motor vehicle dealer protection statute. Spartan promptly moved to strike the affidavit as inappropriate. Indeed, the affidavit is beyond the scope of the court's solicitation of supplemental materials and is given no consideration by the Court.

This construction admittedly adds a wrinkle to the statute's definition of motor vehicle dealer. It is a construction, however, that gives effect to the legislative intent reflected in the legislative history. It is a construction that harmonizes all of the statute's provisions, giving coherent meaning to the regulatory scheme established thereby. It permits recognition of the broad definition of motor vehicle adopted in *Mull*, while simultaneously permitting a result consistent with the *General Aviation* rulings. And, not least importantly, it is a construction that makes sense. To adopt the construction urged by Spartan,—that the statute regulates relationships between manufacturers and dealers of all self-propelled devices that are or may be made capable of operation on a highway, lawfully or not—would lead to absurd results, undermining the very stability and predictability of business relationships that the statute is designed to promote.

Accordingly, the Court holds that the motor vehicle dealer protection statute applies only to relationships between motor vehicle manufacturers and licensed motor vehicle dealers. Spartan concedes that the Turf–Truckster is not required to be titled and that it is not a licensed motor vehicle dealer. It follows that Spartan is not entitled to the protections of the motor vehicle dealer protection statute. On this point, there is no genuine issue of material fact. RAC is therefore entitled to summary judgment on count I of Spartan's counterclaim.

### IV.

In sum, the court concludes that RAC's motion to dismiss and for summary judgment must be granted in both respects. Count II of the counterclaim will be dismissed for failure to state a valid claim. RAC will be awarded judgment as a matter of law on the claims contained in count I of the counterclaim. A partial judgment order consistent with this opinion shall issue forthwith.

### PARTIAL JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that the motion of Ransomes America Corporation to dismiss and for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that count II of the counterclaim of Spartan Distributors, Inc., is **DISMISSED** for failure to state a valid claim.

**IT IS FURTHER ORDERED** that Ransomes America Corporation is **AWARDED JUDGMENT** as a matter of law on the claim contained in count I of the counterclaim.