NEWPORT WEST CONDOMINIUM ASSOCIATION v VENIAR

Docket No. 69278. Submitted February 9, 1984, at Lansing.—Decided
April 17, 1984.

> Defendants, Seymour and Florence Veniar, are owners of a
> condominium unit in the Newport West condominium project.
> As part of the purchase agreement defendants were required to
> pay a monthly association fee to cover the operation, manage-
> ment, and maintenance of the condominium project. Following
> a dispute concerning the creation and maintenance of an

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Condominiums and Cooperative Apartments §§ 31,
38 et seq.

[1, 7, 10] 15A Am Jur 2d, Condominiums and Cooperative Apartments
§§ 14, 16.

Construction of contractual or state regulatory provisions respect-
ing formation, composition, and powers of governing body of
condominium association. 13 ALR4th 598.

[2-4] 15A Am Jur 2d, Condominiums and Cooperative Apartments
§§ 36, 37.

Expenses for which condominium association may assess unit own-
ers. 77 ALR3d 1290.

Validity and construction of condominium association's regulations
governing members' use of common facilities. 72 ALR3d 308.

[4, 7, 10] 15A Am Jur 2d, Condominiums and Cooperative Apartments
§§ 28, 29, 34, 57.

[5] 15A Am Jur 2d, Condominiums and Cooperative Apartments §§ 9-
11.

73 Am Jur 2d, Statutes § 385 et seq.

[6] 73 Am Jur 2d, Statutes §§ 22, 24.

[8] 1 Am Jur 2d, Accord and Satisfaction § 4.

[9] 61A Am Jur 2d, Pleading §§ 23, 125.

[10] 15A Am Jur 2d, Condominiums and Cooperative Apartments § 32
et seq.

22 Am Jur 2d, Damages §§ 11-13.

59 Am Jur 2d, Parties § 97.

[11, 12] 20 Am Jur 2d, Costs § 72.

22 Am Jur 2d, Damages § 168.

[12] 15A Am Jur 2d, Condominiums and Cooperative Apartments
§ 57.

20 Am Jur 2d, Costs §§ 11, 73.

adequate reserve fund to cover the depreciation and obsoles-
cence of the project's capital assets, the defendants withheld a
portion of the monthly assessment fee. Defendants' checks
contained a memo to the effect that "payment was being made
in full". On October 10, 1978, the payment in full inscription
was crossed out by the plaintiff Newport West Condominium
Association and on the back side of the check was written
"Deposit as partial payment against balance of $1,577.89".
Thereafter, plaintiff began to return defendants' checks without
cashing them. Defendants stopped making monthly payments
altogether between March, 1979, and August, 1979. Starting in
September, 1979, and until the date of trial, defendants made
full payments of their monthly assessment obligations to the
association. On May 6, 1979, the association filed a lien against
defendants' condominium unit. On May 31, 1979, plaintiff,
Newport West Condominium Association, on behalf of itself,
the Newport West condominium project and all other owners of
condominiums of said project, brought an action against the
defendants in the Washtenaw Circuit Court seeking to collect
the delinquent assessment fees plus interest, costs, and attor-
ney fees. Defendants counterclaimed alleging an accord
and satisfaction, that plaintiff had malice towards defen-
dants, that there were encroachments constructed into the
common areas of the project to defendants' damage, that defen-
dants were entitled to an injunction to prohibit future special
assessments, and that defendants were entitled to an injunction
against the association to prevent the impending termination of
utility services to defendants' condominium unit. The trial
court, Henry T. Conlin, J., issued an opinion and order in
plaintiff's favor in the following amounts: (1) $2,678.61 for
overdue assessments, (2) $778.92 for interest to July 20, 1982,
at the rate of 7%, and (3) $5,000 for attorneys' fees. Defendants
filed a motion for a new trial or for an amendment of the
judgment against them. The motion was denied. Defendants
appeal. *Held:*

1. The Condominium Act does not provide a co-owner with
the self-help remedy of withholding part or all of his assessed
fees.

2. Plaintiff was entitled to proceed under either the Condo-
minium Act or the Horizontal Real Property Act, which it
repealed.

3. Defendants did not acquire, through the Horizontal Real
Property Act or otherwise, a right to withhold portions of
assessed fees in response to plaintiff's managerial failings.

4. The payment of assessments is an independent obligation

under either the Condominium Act or the Horizontal Real Property Act. A co-owner is precluded under either act from asserting failure of the association to provide services or management as a defense to a suit to recover delinquent assessments.

5. Defendants' remedy for violations by the association of the master deed, bylaws, or the Condominium Act consists of legal action against the association and not the withholding of fees.

6. The trial court reached the proper result in determining that the defense of accord and satisfaction did not apply here. In this case the defense of accord and satisfaction fails because there was no dispute regarding the correct amount of assessments owed.

7. The trial court's judgment for the plaintiff on its suit for overdue assessments and interest is affirmed.

8. The trial court did not err in finding that the issues in defendants' counter-complaint concerning audits and adequacy of reserve accounts were raised only as defenses to plaintiff's suit and not as counterclaims. Those issues were not sufficiently pled as counterclaims and were not tried by express or implied consent of the parties as counterclaims because they were asserted defensively at trial. There is no injustice to the defendants in this regard since those issues were not decided on their merits and may be the subject of separate litigation.

9. The trial court correctly determined that the defendants could not obtain relief by way of an order requiring the removal of certain allegedly offending encroachments into the common areas of the project since such relief could not be obtained without joinder of the co-owners who constructed them. However, the alternative relief sought by the defendants, money damages from the plaintiff, would have constituted complete relief for the acts pled. The trial court's disposition of this issue is therefore vacated and this part of the cause is remanded for a determination of this issue on the merits by the trial judge, to be accompanied by findings of fact and conclusions of law.

10. The Condominium Act provides the trial court with the discretion to award attorney fees in this action. However, under the peculiar circumstances of this case, the trial court abused its discretion in awarding attorney fees to the plaintiff. The award of attorney fees is vacated.

Affirmed in part, reversed in part, and remanded.

1. CONDOMINIUMS — CONDOMINIUM ACT — COMPLIANCE BY UNIT OWNERS.

The Condominium Act requires each condominium unit owner to

comply with the condominium project's master deed, bylaws, and the rules and regulations found in and promulgated under the act (MCL 559.165; MSA 26.50[165]).

2. CONDOMINIUMS — CONDOMINIUM ACT — HORIZONTAL REAL PROP-
ERTY ACT — COMMON EXPENSES — ASSESSMENT OF FEES.

The Condominium Act and the Horizontal Real Property Act require the assessment of fees against condominium units to cover the common expenses of the condominium project; a co-owner may not be exempted from contributing his or her share of the common expenses by nonuse or waiver of the use of any common element or by abandonment of his unit (MCL 559.15, 559.169, subds [3], [4]; MSA 26.50[15], 26.50[169], subds [3], [4]).

3. CONDOMINIUMS — ASSESSMENT OF FEES — LIENS — FORECLOSURE —
MONEY JUDGMENTS.

Sums assessed against a co-owner by an association of condominium co-owners that remain unpaid constitute a lien upon the delinquent co-owner's unit; the association is empowered to foreclose on the lien or to seek a money judgment (MCL 559.208; MSA 26.50[208]).

4. CONDOMINIUMS — CONDOMINIUM ACT — HORIZONTAL REAL PROP-
ERTY ACT — ASSESSMENT OF FEES — SELF-HELP REMEDY.

The Condominium Act and the Horizontal Real Property Act do not provide a co-owner with the self-help remedy of withholding part or all of the fees assessed by an association of condominium co-owners because of the association's alleged failure to provide services or management to the co-owners; a co-owner may not assert such alleged failure of the association in an answer or as a setoff to a complaint brought by the association for the nonpayment of assessments (MCL 559.15, 559.239; MSA 26.50[15], 26.50[239]).

5. CONDOMINIUMS — HORIZONTAL REAL PROPERTY ACT — CONDOMIN-
IUM ACT — ACTIONS.

A party is entitled to proceed under either the Horizontal Real Property Act or the Condominium Act where the party's suit was instituted after the effective date of the Condominium Act, which repealed the Horizontal Real Property Act, and concerned events occurring both before and after the effective date of the Condominium Act (MCL 559.1 *et seq.*, 559.270; MSA 26.50[1] *et seq.*, 26.50[270]).

6. WORDS AND PHRASES — "MAY".

The word "may" in a statute is to be construed as permissive

rather than mandatory unless a contrary legislative intent appears.

7. CONDOMINIUMS — CONDOMINIUM ACT — ACTIONS BY CO-OWNERS.

The remedy provided to a co-owner for violations by an association of condominium co-owners of the master deed, bylaws, or the Condominium Act consists of a legal action against the association and not the withholding of fees assessed by the association (MCL 559.207; MSA 26.50[207]).

8. ACCORD AND SATISFACTION — MEETING OF THE MINDS.

An accord and satisfaction does not take place absent a meeting of the minds; its essence is the compromise of an existing claim; the claim must be disputed and then a substituted performance agreed upon and accomplished.

9. TRIAL — PLEADING — DEFENSES — COUNTERCLAIMS — COURT RULES.

A trial court may determine that certain issues raised by the defendant in an action were raised only as defenses to the plaintiff's suit and not as counterclaims where the issues were not sufficiently pled by the defendant as counterclaims and were not tried by express or implied consent of the parties as counterclaims (GCR 1963, 111.1[1], 118.3).

10. DAMAGES — PLEADING — CONDOMINIUMS — PARTIES — MONEY DAMAGES.

A co-owner's request that an association of condominium co-owners be ordered to remove certain encroachments into the common areas of the condominium project built by certain co-owners with the authorization of the association cannot be heard by the trial court without joinder of the co-owners who constructed the encroachments; where money damages are sought from the association, in the alternative, based upon these acts such money damages may be found to constitute complete relief for the acts pled.

11. TRIAL — COSTS — DAMAGES — ATTORNEY FEES.

An award of attorney fees as an element of costs or damages is generally prohibited in Michigan absent express authorization by statute or court rule.

12. CONDOMINIUMS — ACTIONS BY ASSOCIATION OF CO-OWNERS — DEFAULT BY CO-OWNERS — COSTS — ATTORNEY FEES.

An association of condominium co-owners which is successful in a proceeding arising because of a default by a co-owner may recover the costs of the proceeding and such reasonable attor-

neys fees as may be determined by the court; the award of such attorney fees is discretionary (MCL 559.206[b]; MSA 26.50[206][b]).

*Hooper, Hathaway, Price, Beuche & Wallace* (by *Charles W. Borgsdorf),* for plaintiff, counter-defendant.

*Burke, Rennel & Hood,* (by *E. Edward Hood),* for defendants, counter-plaintiffs.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. Seymour and Florence Veniar (defendants), owners of a condominium unit in the Newport West condominium project, appeal as of right from a bench trial ruling requiring them to pay $2,678.61 in overdue general assessments, $778.92 in interest, and $5,000 in attorney fees to plaintiff association.

In 1975, defendants purchased a condominium unit in the Newport West condominium project located in Ann Arbor. As part of the purchase agreement defendants were required to pay $60 a month to the plaintiff as an "association fee". The purpose of these fees is to cover the operation, management, and maintenance of the condominium project. The fees are determined by the association's board of directors in accordance with the budgetary needs of the project. Each year's assessment may fluctuate, depending upon the operational needs of the condominium project. One of the factors which the board of directors must consider when establishing the project's annual budget is the creation of an adequate "reserve fund" to cover the depreciation and obsolescence of

* Circuit judge, sitting on the Court of Appeals by assignment.

the project's capital assets, *e.g.*, to replace such capital items as roofs, sidewalks, driveways, etc. This reserve is funded by a percentage of the total monthly assessments paid by the association's condominium unit owners.

Between 1976 and 1977, the adequate maintenance of the reserve fund became a great concern to the residents of Newport West. Apparently Amurcon Corporation, the project's developer, had failed to properly maintain the reserve fund as required. Instead, it had used the money from the reserve account to pay for general operating expenses. Consequently, a three-person financial subcommittee was appointed by plaintiff's advisory committee to investigate the financial straits of the project. Defendant Seymour Veniar was selected as the subcommittee's chairperson. The other two members appointed to the subcommittee were Walter Albers, an entrepreneur, and Jim Attaway, a certified public accountant. After reviewing the developer's books and records, Mr. Veniar discovered that the developer had not established the reserve fund, as was required under the association's bylaws, nor had it provided audited statements of the association's finances to the Newport West residents, as was also required by the bylaws. The subcommittee made various recommendations to the residents; one such recommendation was that each unit owner withhold part of his or her monthly assessment fee until the problems were straightened out. Some of the members adopted this recommendation and began to withhold a portion of their monthly assessment payments. Subsequently, an agreement was reached between plaintiff's advisory committee and the developer regarding the developer's actions and inactions. Specifically, the developer

agreed to contribute $13,230 to the reserve account, $50,000 towards the repair and paving of the main road through the Newport West project, $30,000 to the operating account, and it also forgave a debt it was claiming against plaintiff in the amount of $21,000. Defendants, however, refused to concur with this agreement and continued to withhold a portion of their assessment fee. Defendants' main concern was that they were being subjected to an unknown financial exposure due to the absence of a properly maintained reserve fund. Defendants, however, were willing to make up their arrearage if the association would cause a "physical" audit of the project's capital assets, along with an audit of the project's books.

In early 1977, the association raised defendants' monthly assessment fee from $60 a month to $97 a month. Despite this increase, defendants continued to pay the association a reduced amount ($49.80). On the front of each of their checks, in the "memo" portion of the checks, defendants placed words to the effect that "payment was being made in full" for the month dated on the check. Defendants sent a letter to each new management group that took over the management of Newport West, explaining the dispute they had with the association. Usually, the back of defendants' checks would be rubber-stamped "for deposit only" and the checks placed in the association's bank account. On October 10, 1978, however, the "payment-in-full" inscription was, for the first time, crossed out and on the back side of the check was written: "Deposit as partial payment against balance of $1,577.89". Thereafter, plaintiff began to return defendants' checks without cashing them. Accordingly, upon the advice of counsel, defendants stopped making monthly assessment pay-

ments altogether between March, 1979, and August, 1979. Starting in September, 1979, and until the date of trial, defendants made full payments of their monthly assessment obligations to the association.

On May 6, 1979, a lien was filed against defendants' condominium unit. Nevertheless, defendants remained adamant in their refusal to pay their delinquent assessment obligations. Defendants persisted in their belief that all was not right with the reserve fund and that the association was wrongfully refusing to cause an independent audit of the books. Subsequently, defendants' neighbors began to ostracize defendants because of defendants' refusal to pay their delinquent assessment fees. Someone placed a notice on the project's tennis court sign-up board telling defendants that until they paid their assessment fees they could not use the tennis courts. Likewise, defendants were no longer invited to community get-togethers and defendants' immediate neighbors, Mr. and Mrs. Langer, built a deck, allegedly encroaching into the project's common area, blocking defendant's view of the rolling lawn around their unit.

On May 31, 1979, plaintiff began the instant action against defendants to collect the delinquent assessment fees plus interest, costs, and attorney fees. Plaintiff filed an amended complaint against defendants on August 3, 1979. Defendants counterclaimed, alleging that there had been an accord and satisfaction, that plaintiff had malice towards defendants, that there were encroachments constructed into the common areas of the project to defendants' damage, that defendants were entitled to an injunction to prohibit future special assessments, and that defendants were entitled to an injunction against the association to

prevent the impending termination of utility services to defendants' condominium unit.

Following a bench trial, the trial court issued an opinion and order in plaintiff's favor in the following amounts: (1) $2,678.61 for "overdue assessments"; (2) $778.92 for "interest to July 20, 1982" at the rate of 7%; and (3) $5,000 for "attorneys' fees".

Defendants filed a motion for a new trial or for an amendment of the judgment against them. The motion was denied.

The initial question raised in this appeal is whether plaintiff's failure to provide audited financial statements to the co-owners and to maintain a proper reserve fund, as required by its bylaws, may be asserted by a co-owner as a defense against an action for overdue assessments. In arguing that it may not, plaintiff relies upon certain provisions of the Condominium Act, MCL 559.101 *et seq.;* MSA 26.50(101) *et seq.*

MCL 559.165; MSA 26.50(165) requires each condominium unit owner to comply with the project's master deed, bylaws, and the rules and regulations found in and promulgated under the Condominium Act. In this case both the bylaws and the act require the assessment of fees to cover the common expenses of the project. MCL 559.169(3); MSA 26.50(169)(3); Newport West Condominium Bylaws, art II, §4. Under MCL 559.169(4); MSA 26.50(169)(4) a co-owner may not be exempted from contributing his or her share of the common expenses by nonuse or waiver of the use of any common element or by abandonment of his or her unit. The sums assessed against a co-owner by the association that remain unpaid constitute a lien upon the delinquent co-owner's unit. MCL 559.208; MSA 26.50(208). This section of the act empowers

the association to foreclose on the lien or to seek a money judgment. Section 139 of the act, MCL 559.239; MSA 26.50(239), provides:

"A co-owner may not assert in an answer, or set off to a complaint brought by the association for non-payment of assessments the fact that the association of co-owners or its agents have not provided the services or management to a co-owner(s)."

In our view the phrase "services or management" as employed in the above section embraces the audits and properly funded reserves desired by defendant. Simply stated, the Condominium Act does not provide a co-owner with the self-help remedy of withholding part or all of his assessed fees.

Defendant on appeal suggests that the provisions of the Condominium Act should not have been applied to this matter in the first place. The effective date of the Condominium Act was July 1, 1978. MCL 559.272; MSA 26.50(272). Enactment of the Condominium Act was accompanied by repeal of the Horizontal Real Property Act (HRPA), MCL 559.1 *et seq.;* MSA 26.50(1) *et seq.,* which addressed the same subject matter. MCL 559.271; MSA 26.50(271).

Defendant relies on § 170 of the Condominium Act, which provides:

"This act does not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or a liability, penalty, forfeiture, or punishment incurred before this act takes effect, but the same may be enjoyed, asserted, and enforced, as fully and to the same extent as if this act had not been passed. Proceedings may be consummated under and in accordance with Act No. 229 of the Public Acts of 1963, as amended, being sections 559.1 to 559.31 of the Michigan

Compiled Laws. Proceedings pending at the effective date of this act and proceedings instituted thereafter for any act, offense committed, right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred before the effective date of this act may be continued or instituted under and in accordance with Act No. 229 of the Public Acts of 1963, as amended." MCL 559.270; MSA 26.50(270).

Plaintiff's suit was instituted after the effective date of the act and concerned events occurring both before and after that date. This being the case, we believe that plaintiff was entitled, pursuant to the last sentence of § 170 above, to proceed either under the HRPA or the Condominium Act. The sentence provides that such proceedings *may* be undertaken pursuant to HRPA; the word "may" in a statute is construed as permissive rather than mandatory unless a contrary legislative intent appears. *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366; 217 NW 15 (1928); *Sutton v Cadillac Area Public Schools,* 117 Mich App 38, 42; 323 NW2d 582 (1982). We perceive no such contrary intent.

Still, given the unambiguous language of the first sentence of § 170, any right acquired by defendants prior to the effective date of the Condominium Act may not be defeated by its passage. However, defendants had not acquired, through HRPA or otherwise, a right to withhold portions of assessed fees in response to plaintiff's managerial failings. The consistent flaw in defendants' position has been that they cast the legal questions posed by this case in a purely contractual framework. Because plaintiff has breached certain conditions governing its contract relationship with defendants, they posit, defendants may be excused in whole or in part from tendering their fees. This

position ignores the plain fact that payment of the assessments is, and has been, an independent obligation. We have seen where this is true under the Condominium Act; it was equally the case under HRPA.

Section 15 of the former act provided:

"The owner of each apartment shall contribute to the expenses of administration and to the expenses of maintenance and repair of the common elements of the condominium project according to the percentage allocated to such apartment in the master deed. No owner shall be exempt from contributing as herein provided by nonuse or waiver of the use of any of the common elements or by abandonment of his apartment." MCL 559.15; MSA 26.50(15).

HRPA contains no provision corresponding to § 139 of the Condominium Act, set forth *supra,* precluding the co-owner from asserting failure of the association to provide services or management as a defense to a suit to recover delinquent assessments. But we believe that such may be implied from a fair reading of the former act. Section 15 of HRPA makes the payments mandatory and indicates that no exemption is provided for nonuse of common areas. Had the Legislature intended an exemption to be available to co-owners wishing to withhold payments as a self-help remedy, we think such would have been explicitly provided.

Defendants are not without a remedy for violations by the association of the master deed, by-laws, or the Condominium Act. This remedy consists of legal action against the association, see MCL 559.207; MSA 26.50(207), and not the withholding of fees.

A second issue relevant to plaintiff's action for recovery of delinquent fees is whether defendants

were entitled to a ruling that an accord and satisfaction took place.

Defendants claim that the notation on the front of the checks by which they effected partial assessment fee payments, to the effect that payment was being made in full, created an accord and satisfaction upon plaintiff's acceptance and negotiation of the checks. The trial court ruled that the general rules regarding accord and satisfaction in contract law did not apply because the Condominium Act governed the rights and obligations of the parties. While we are reluctant to endorse the trial court's reasoning, we are satisfied that it reached the proper result.

An accord and satisfaction does not take place absent a "meeting of the minds". *Fritz v Marantette,* 404 Mich 329; 273 NW2d 425 (1978), *reh den* 406 Mich 1103 (1979). Its essence is the compromise of an existing claim; the claim must be disputed and then a substituted performance agreed upon and accomplished. *Gitre v Kessler Products Co, Inc,* 387 Mich 619, 623-624; 198 NW2d 405 (1972); *Stadler v Ciprian,* 265 Mich 252, 262; 251 NW 404 (1933).

In this case the defense of accord and satisfaction fails because there was no dispute. Defendants readily concede that at the outset their assessments were $60 per month. Defendants withheld a portion of the liquidated amount, but did so because they were concerned about certain of plaintiff's operational practices. The correct amount of assessments owed was not the subject of a genuine dispute. For the foregoing reasons, we affirm the judgment for plaintiff on its suit for overdue assessments.

We now turn our attention to the lower court's disposition of the issues raised by defendants'

counter-complaint. Defendants maintain that the trial court erred in finding that the issues concerning audits and adequacy of reserve accounts were raised only as defenses to plaintiff's suit and not in defendants' counterclaim. We agree with the trial court.

Defendants' counter-complaint makes no demand for an audit, nor is plaintiff's failure to cause a certified audit the subject of any of the five counts. Count IV raises the question of the adequacy of plaintiff's reserve accounts. But this count did not seek funding of a reserve account, nor did it charge that defendants were damaged by past failures to maintain adequate reserves. Instead, it sought an injunction preventing the levy of any special assessments in the future, or, in the alternative, an order that plaintiff must pay any such assessments itself. When the issues concerning the audits and reserves were raised by defendants at trial they were asserted as defenses. This portion of defendants' opening statement typifies their trial posture:

"So in terms of the plaintiff's case, your Honor, we feel that, again, they did not meet the essential prerequisites that they were required by law to meet, and that is to give an audit and also take and establish reserve accounts from day one. Having failed to do that, they can make no claim that any money is due."

We conclude from the foregoing discussion that: (1) the audit and reserve issues were not sufficiently pled by defendants as counterclaims, GCR 1963, 111.1(1), and (2) were not tried by express or implied consent of the parties as counterclaims, GCR 1963, 118.3, because they were asserted defensively at trial. Because the trial court correctly concluded that plaintiff's failure to cause an audit,

or to consistently maintain adequate reserves, could not be a defense to plaintiff's suit, it concluded that the issues need not be reached. We note, parenthetically, that defendants were nonsuited on Count IV of their counter-complaint because the proofs did not show that any special assessments were imminent.

We perceive no injustice to defendants arising from our disposition of this issue. Because defendants' allegations concerning plaintiff's failure to order audits or maintain reserves were not decided on their merits, they may be the subject of separate litigation.

The next issue relates to the trial court's disposition of Count III of defendants' counter-complaint. The principal allegations of this count were: (1) that plaintiff "improperly and illegally authorized encroachments", notably flower beds and sun decks, built by certain co-owners into common areas of the project; and (2) that these authorizations were intentionally designed to diminish the value of defendants' unit and to "cause harrassment and grief" to defendants. Defendants prayed that plaintiff be ordered to remove all such encroachments or to pay money damages.

Testimony at trial was largely limited to one specific encroachment—a patio deck built by defendants' neighbors, the Langers. The trial court held that defendants' "right to have the Langers' patio deck removed could not be decided without the Langers present as a named defendant of the counterclaim".

No one questions that defendants could not obtain removal of the offending encroachments without joinder of the co-owners who constructed them. However, the gravamen of defendants' complaint was that the encroachments were illegally and

maliciously authorized by plaintiff; money damages were sought, in the alternative, based upon these acts. In our view, money damages from plaintiff would have constituted complete relief for the acts pled. We therefore remand for a determination of this issue on the merits by the trial judge, to be accompanied by findings of fact and conclusions of law, GCR 1963, 517.1.

Finally, defendants contest the award of attorney fees to plaintiff in the amount of $5,000. The general rule in Michigan prohibits an award of attorney fees as an element of costs or damages absent express authorization by statute or court rule. *H & L Heating Co v Bryn Mawr Apartments of Ypsilanti, Ltd,* 97 Mich App 496, 506; 296 NW2d 354 (1980); *Birou v Thompson-Brown Co,* 67 Mich App 502, 515; 241 NW2d 265 (1976), *lv den* 397 Mich 808 (1976). Section 106 of the Condominium Act provides clear authorization:

"In a proceeding arising because of an alleged default by a co-owner, the association of co-owners, if successful, may recover the costs of the proceeding and such reasonable attorneys' fees as may be determined by the court." MCL 559.206(b); MSA 26.50(206)(b).

Because, as determined *supra* in this opinion, plaintiff could properly proceed under the Condominium Act, this provision is controlling. An award of attorney fees under § 106 is, by the terms of that section, discretionary. We are convinced, however, that an attorney fee award was inappropriate given the facts of this case.

Defendants have been an active force in the condominium project, and, in our view, their efforts to ensure the fiscal integrity of the project benefitted the other members of their community. The record reveals that defendants withheld part

of their assessment in the good faith belief that they were entitled to do so; it also appears that this action was intended to coerce compliance with the project's bylaws. Under these peculiar circumstances, we hold that the trial court abused its discretion in awarding attorney fees to plaintiff and we vacate that award.

The award of overdue assessments and interest to plaintiff is affirmed. The award of attorney fees to plaintiff is vacated. The court's disposition of Count III of defendants' counter-complaint is vacated, and that part of the cause remanded for proceedings as set forth *supra* in this opinion. The court's disposition of defendants' counter-complaint is otherwise affirmed. We retain jurisdiction.

Affirmed in part, reversed in part, and remanded.